RAFAEL FUSTER Y FUSTER, Plaintiff and Appellant, *v.* AMÉRICA PAONESA ET AL., Defendants and Appellees.

No. 5224. Argued November 25, 1930.—Decided July 7, 1932.

730

*Luis T. Camacho* and *F. Beiró Rovira* for appellant.  *T. Bernardini de la Huerta* for appellee Julia B. de Moya.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Julia B. de. Moya, a married woman, defendant in an action on a promissory note for money borrowed by the said defendant and another, demurred to the complaint for want of facts sufficient to constitute a cause of action. The district judge sustained this demurrer and subsequently dismissed the action as to the defendant, Julia B. de Moya.

The theory of the district judge was that the note copied in the complaint was not a valid obligation as to Julia B. de Moya, because it did not show that she had signed the same with the consent of her husband or that the transaction affected her separate property.

Under the former Civil Code the husband was the legal representative of the wife. Without his permission, subject to certain exceptions, (as for example in litigation between herself and her husband or when made a defendant in a criminal action), she could not appear in court. Section 60. Without his consent, she could not alienate her own property, acquire other property, nor assume any personal obligation "except in the cases and with the limitations established by law." Section 61. These and other like provisions were omitted from the Revision of 1902 presumably for some purpose. The effect of such omission coupled with the reënactment of articles 1261 and 1263 of the former code, as sections 1213 and 1215 of the Revised Code (Revision of 1930, p. 257) was the emancipation of the wife, so far as her capacity to contract is concerned, in all matters wherein the rights of the husband as administrator and legal representative of the conjugal partnership are not involved. The wife cannot interfere with the management and control of the community property by the husband nor, except in certain specified circumstances, bind the conjugal partnership. In all other respects, so far as the question of her capacity to contract is concerned, her freedom is absolute, or to say the least, her

incapacity, whatever it may be in certain circumstances, is limited to "the cases specified by law."

Under the former Civil Code the wife had the right to manage her separate estate unless she had turned the same over to her husband before a notary. Section 1384. She could neither alienate, nor encumber her property without the permission of her husband, nor could she appear in court to defend her own property rights without judicial authorization. Section 1387. Section 160 of the Revised Civil Code, as amended in 1904 (Section 92 of the Revision of 1930) places the husband and wife on an equal footing as to the management, control and disposition of their respective separate estates. Under the former code the husband was the administrator "of the property of the conjugal partnership, except when the contrary is stipulated and in the case of section 1384." Section 59. Section 93 of the Revised Code (Revision of 1930) retains the husband as the legal representative of the conjugal partnership, but provides that: "The wife may contract, and appear in court, in all cases referring to the defense of her own rights and property, to the discharge of the *patria potestas,* guardianship or administration conferred on her by the law, and to the exercise of a profession, employment or occupation." Under the former code the husband could dispose of the community real estate as freely as he could dispose of his own separate estate. Under section 91 of the Revised Code the husband is still the administrator of the community property, "except when stipulated otherwise," but "the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null, except when effected with the mutual consent of both parties to the marriage." The same section provides that "The purchases made by the wife out of the conjugal property shall be valid when the said purchases comprise things or articles for the use of the family, in accordance with their social position." This is neither

an innovation nor an enlargement of the wife's capacity to contract. A similar provision may be found in section 62 of the former code. The obvious purpose of the provisions as it now reads, if not as originally enacted, is to enable the wife to bind the conjugal partnership for necessaries, not to limit in any way her individual capacity to contract in her own name. The other changes just outlined are in substance and in effect limitations upon the power of the husband as administrator of the community property. Sections 92 and 93 anticipate and remove the possibility of any doubt that otherwise might arise in the event of an attempt by the husband, as administrator of the community property or as representative of the conjugal partnership, to interfere with the wife's freedom of action in the management, control or disposition of her separate estate or in connection with the other matters mentioned in section 93. Neither of these sections is a partial removal of any preexisting general disability on the part of the wife to contract in her own name. In any event, subject only to the exception above indicated, all such general disability was removed by the omission of sections 60 and 61 and other similar provisions of the former Civil Code and the reënactment of sections 1261 and 1263 as sections 1213 and 1215 of our present code.

The essential requisites of a valid contract, as prescribed by section 1213 are, first, "the consent of the contracting parties," second, "a definite object which may be the subject of the contract," and third, "the cause for the obligation which may be established." Section 1215 says that "married women, in the cases specified by law," cannot consent. In this jurisdiction there is no other restriction upon the capacity of a married woman to contract.

Money borrowed by a married woman in her own name on her personal promissory note is not community property, as defined by section 1301 of the code (Revision of 1930) because it is not "property acquired . . . at the expense of

the partnership property." That, however, is not the question. The obligation assumed by the wife in executing such a note as that set out in the complaint in the instant case is not the obligation of the conjugal partnership. It is not among the "charges and obligations" enumerated in section 1308 of the Civil Code (Revision of 1930). It does not, on the face of the document, purport to be any such obligation. The wife, ordinarily, has no power to bind the conjugal partnership. The prospective payee is presumed to know this. If he lends her money and takes her personal note, the inference is that he does so on the faith and credit of her separate estate or for some other good and sufficient reason best known to himself, not upon the faith and credit of the conjugal partnership.

Whether the loan is based upon the faith and credit of the wife's separate estate is immaterial because her capacity to contract is not limited to matters affecting her separate estate. She may have no separate estate. Nor need she first establish herself in any profession, business or occupation. She may borrow, if she can, on the lender's estimate mistaken or otherwise of her personal honesty and integrity, of her sound business judgment, of her hold on the affections of her husband, of the possibility of a bequest in the will of some opulent relative or of any other prospect more or less remote as to future ability to pay. Neither the motive of the lender nor the source to which he looks for payment is important. When he sues upon the note he need not allege either that it was given with the consent of the husband or that the transaction affected the wife's separate property because neither of these things is essential to the validity of the wife's personal obligation.

In the recent case of *E. Solé & Co., S. en C.* v. *Sepúlveda,* 41 P.R.R. 807, this Court said:

" . . . . There is nothing in the law to prevent a woman from signing a conditional contract for the purchase of an automobile, whether she has independent property or not. If she has none, and

the contract was one made without the consent of the husband, or no agency could be implied in general the matrimonial society would not respond.''

See also *Peraza* v. *Registrar of Arecibo,* 30 P.R.R. 496; *Sojo* v. *Registrar,* 35 P.R.R. 785; *Hernández Mena* v. *Registrar of Mayagüez,* 22 P.R.R. 599, and *Santini* v. *Flores, ante,* p. 457.

The judgment appealed from should be reversed and the case remanded for further proceedings not inconsistent herewith.

Mr. Justice Córdova Dávila took no part in the decision of this case.